HORACE J. HALL v. HIRAM MARTIN & AL.

At common law the heir was liable on the covenants of his ancestor in which he was specially bound, just so far, and no farther, as he had assets by descent; and, as real estate alone descended to him, his liability was limited to that.

But when by our statute the personal estate is made to descend to him, substantially in the same way, a correct application of the common law principle requires it to be treated as assets in his hands, equally with the real estate; and it was therefore *held*, that such heir is liable on the covenants of his ancestor, which could not have been proved while the estate was in the course of administration, to the extent of the *personal* as well as the *real* estate, which has so descended to him.

Suits against an heir or devisee are not barred by the provisions of the Revised Statutes, ch. 161, secs. 5 and 6, limiting actions against executors or administrators of solvent estates, where no funds are retained for contingent claims by order of the judge of probate, to three years from the original grant of administration.

But the limitation applies only to suits against the executor or administrator, and therefore the remedy against the heir or devisee upon claims which could not be proved during the three years, because contingent, is not impaired by these provisions, but remains as in the case of insolvent estates.

THIS is an action for covenant broken on the covenants of a deed made by Moses Martin, the father of the defendants, to the plaintiff, in which deed he covenanted for himself and his heirs. In the declaration

it is alleged that the defendants "received personal assets as heirs of their said father, sufficient to perform all the covenants of the aforesaid deed."

The defendants demurred to the declaration and claim judgment, for the reason that it does not appear by the declaration that they received land or real estate by descent.

*William Haywood,* for defendants.

An heir at common law, is one who inherits by descent, and the subject matter of an inheritance must be lands, tenements or hereditaments. Chattels are not inheritable, but they go to the executor or administrator, and, after the payment of the debts and legacies, are distributed to the widow and next of kin.    2 Bl. Com. chap. 14, p. 200, and *seq.;* 2 Bl. Com. ch. 2, p. 16 ; 2 Bl. Com. chap. 32, p. 514, and *seq.*

To make an heir liable on the covenant of his ancestor, he must have assets by descent, and of course these assets must be the subject of inheritance.    2 Saund. p. 7, note 4.

The form of a replication by an heir is "that he hath not now at the time of the exhibiting of the bill of the plaintiff, nor at any time before or since has he had any lands, tenements or hereditaments by descent from his said father in fee simple," &c.    3 Chitt. Pl. 973.    Plea of *rien per descent* by heir.

The plaintiff's declaration sets out his title to recover against the defendants, to wit : "That the defendants received personal assets as heirs of their said father, sufficient to perform all of the covenants of the aforesaid deed."    This shows a ground of claim that is insufficient, and in such case a demurrer is proper.    However, this course was taken by agreement, to get at the merits in the shortest way ; it being conceded that the defendants received by distribution sufficient personal property to answer the plaintiff's claim, and it is not pretended that they had any land as heirs of their father.    We think that it must require legislation in aid of the common law to make the defendants liable in a case of this kind.    They are not liable at common law, and it is difficult to conjecture upon what ground they can be liable, as there is no statute in New Hampshire upon the subject.

In order to make devisees liable, the statute 3 and 4 W. & M. chap. 16, was passed, and that statute received a strict construction by the court.    *Wilson* v. *Knubley,* 7 East. 128.

We once had a statute in New Hampshire regulating the matter to some extent, which is now repealed.    Statutes of June 8, 1808 ; Laws of New Hampshire, edition of 1830, p. 65. See *Hutchinson* v. *Stiles,* 3 N. H. 404 ; *Ticknor* v. *Harris,* 14 N. H. 272.

*Ladd,* for plaintiff.

But one question is raised by the demurrer.    The defendants, who are the only children of Moses Martin, the covenantor, did receive personal assets from the estate of their father sufficient to perform the cov-

enants of his deed; there has been a breach of the covenants, and this breach did not take place till all remedy against the administrator was lost, and by a distribution of the assets and the closing of the administration. If the plaintiff cannot recover in this suit he is remediless.

The case of *Hutchinson* v. *Stiles*, 3 N. H. 404, decides nothing but that the heir is not liable on the covenants of his ancestor when an action might have been had against the executor or administrator of the ancestor. And *Richardson, C. J.*, in delivering the opinion of the court in that case, recognizes the law in this State to be that an action may be maintained against an heir having assets when expressly bound by the deed of his ancestor; and such is the rule at common law. *Dyer* v. *Sweeting*, Willes 585; 2 Bl. Com. 243; 2 Saund. 136; Plowd. 439; 1 Ch. Pl. 59.

The case of *Ticknor* v. *Harris*, 14 N. H. 272, was decided under the provisions of the statutes, regulating, limiting and defining the liability of heirs and devisees upon the contracts of their ancestors, which is not now in force. In that case the claim sought to be recovered of the devisees was a mere personal liability of the testator.

By our statute, land as well as personal property is made assets in the hands of the administrator for the payment of debts, and both are divided among the heirs by the same rule of distribution, so that we apprehend no question will be made but the defendants are the heirs of Moses Martin.

Nor will it be contended but that Moses Martin had a legal right to bind his heirs to the plaintiff as he undertook to do by his deeds, and such covenants, we may readily see, would form no inconsiderable portion of the value received for which the plaintiff paid his money when he bought the land. They formed part of the contract.

Just before his death, Moses Martin sold this and other valuable lands to the amount of several thousand dollars, and the money and notes received from such sales went into the hands of his administrator, and were immediately distributed to the defendants.

Now it turns out that the title has failed; Moses Martin sold what was not his to sell, at the same time binding his heirs to warrant and defend the title thereto. His heirs have received the avails of such sale, the benefit derived to the estate from making the covenants that are now broken, and now after all other remedy is lost to the plaintiffs, they claim that they cannot be held to make the title good, because their ancestor sold the land and they took the money and notes received in payment for it instead of taking the land itself.

We submit that such a claim, if it have any foundation at all, rests upon an arbitrary rule of the common law, which has never been expressly adopted in this State, which is not applicable to our state of society or jurisprudence, and is not founded on any axiom of intelligent reason. *Houghton* v. *Page*, 2 N. H. 44; *State* v. *Rollins*, 8 N. H. 550.

We can conceive no possible reason that now exists to support the distinction, and if the reasons for the rule have disappeared, the rule itself should disappear also. The statutes existing in the several States

where this subject is regulated by statute, seem designed to limit, restrict and vary the liability of the heir at common law, fixing the time within which the action must be commenced, prescribing the mode of proceeding, &c. ; hence the adjudicated cases in those States can be of little authority here.

We desire, however, to call attention to the case of *Howes* v. *Bigelow*, 13 Mass. 384, decided under the provisions of the statutes of that State, 1788, c. 66, sec. 5, and 1791, c. 28. Those statutes seem to vary the common law liability of the heir in no way except so far as they restrict it and limit the time of its continuance, and the reasoning of the court in the case above cited, goes upon the assumption that one taking personal assets of his ancestor by virtue of priority of blood, is to be regarded an heir, and it is clearly implied that such an one taking personal property, would be held liable on the covenants of his ancestor.

BELLOWS, J.   At common law, lands in the hands of the debtor himself were not assets for the payment of debts, and creditors could only reach the personal estate and the profits of the real estate, but not the land itself.   Upon the death of the debtor, in case of intestacy, the land descended to the heir, and the personal estate to the executor ; and in respect to simple contract debts, the creditor could look only to the personal estate in the hands of the executor ; while the creditor by specialty in which the heir was named, could reach the land itself in such heir's hands, but the heir was bound no further than he had assets by descent, and nothing was regarded as assets but real estate, for nothing else descended to him.   By will, however, the debtor might charge his lands with the payment of his debts, or any part of them ; and, therefore, when by his covenant or bond he expressly undertook to bind his heir by a necessary implication, it was held to be a charge upon him to the extent of the lands so descended to him ; otherwise such covenant or stipulation would have been wholly inoperative.

By our law, both real and personal estate are made liable for the payment of debts, both before and after the death of the debtor ; although in the hands of the administrator the personal estate is primarily liable. So, too, the personal estate equally with the real estate goes to or descends to the heir, after the debts are paid ; and we think it is clearly the general policy of our law that both descriptions of property shall be assets for the payment of debts before and after the death of the debtor, whether in the hands of the administrator or heirs.

The question, then, is, whether the liability of the heir is limited to the real estate which descends to him, by any authority that ought to be regarded as decisive, in view of the changes of the common law made by our legislature.

In the case of *Hutchinson* v. *Stiles*, 3 N. H. 404, the common law liability of the heir was held to be suspended so long as the remedy against the administrator existed, upon the ground that by our laws no assets passed to the heir until the remedy against the executor or administrator ceased to exist ; and that to hold the heir liable where he had

received no assets, and might never receive any, would be unreasonable and unjust. This conclusion was reached not because of any provision expressly suspending the heir's liability, but because the ground upon which that liability rested at common law, namely, that he had assets by descent, was for a time removed.

Where, therefore, by the provisions of our statutes, the common law is so far changed, that the personal property of the deceased debtor descends to the heir in the same manner as the real estate, it would be but a proper application of the principle of *Hutchinson* v. *Stiles*, to hold the heir liable to the extent of whatever descends to him from his ancestor, which by the policy of our law may justly be regarded as assets for the payment of the debts of the deceased.

The personal estate is by our law primarily charged with such debts, and it is wholly inconsistent with its policy to hold that on distributing that estate among the heirs, after paying such claims as could be proved within the time limited for that purpose, it should cease to be chargeable at all.

At common law, the personal estate continued liable in the hands of the executor or administrator until all the claims were paid; and it would be a wide departure from the policy of *that* law to provide for a distribution of such estate among the heirs, free from all charge for debts not proveable during the administration, but becoming so afterwards.

In the case of *Ticknor* v. *Harris*, 14 N. H. 272, which was a suit against devisees and legatees upon a covenant of the testator, our legislation upon this subject was examined, and it seems to have been understood that the personal estate could be reached only through the executor or administrator; *Parker*, *C. J.*, saying that "no way seems to be provided for a creditor to reach a distributive share of the personal estate in the hands of the heirs, where the suit against the administrator is taken away." It will be seen, however, that this point did not arise, necessarily, in that case; nor does the language used indicate a full consideration of it, or that it was intended as an authoritative decision of that question.

It was there held that the remedy against devisors existed under our statute, but that the proviso saving the remedy against *heirs* and *devisees* did not reach *legatees*, upon the ground that this saving clause created no *new* right; and therefore, as no action against *legatees* could be maintained before that statute, none can be since. We are inclined, therefore, although with the highest respect for the suggestion of Judge Parker, to consider this as still an open question in this State.

When the law provided for distributing among the heirs the surplus of the personal estate remaining after paying such claims as could be proved during the time, and in the methods pointed out, and when it must have been obvious to every one that large claims might afterwards accrue which could not before have been proved, we think it a sound construction of these statutes to hold that by a fair implication the personal estate which is made thus to descend to the heir must be regarded as assets for the payment of such claims. It is true these statutes do

not expressly, in terms, make the personal estate assets in the hands of the heir; nor do they expressly suspend all remedy against the heir while the real estate is in the hands of the administrator, and yet by implication it *is* suspended, and rightfully too.

The principle of the common law clearly was that the heir should be liable for specialty debts in which he was bound, *just to the extent of the assets* which descended to him from the debtor, and no further. Any provisions of our statutes which have the effect to increase or diminish what must substantially be regarded as assets, must, upon the principle on which the common law rests, cause a corresponding increase or diminution of the heir's liability; and this was the doctrine of *Hutchinson* v. *Stiles.* So, also, whatever *descended* to the heir from the debtor by the common law was assets; and therefore, when by our law personal estate is made to descend to him, it must be regarded as assets also.

The case of *Ticknor* v. *Harris* decides that a suit cannot be maintained against a legatee for the debt of the testator, but this decision does not bear upon the question before us. At common law the legatee was not bound, there was no attempt by the testator to bind him, and no change has been made by our statutes that affect his relation to the creditors. In this respect the legatee differs widely from the heir.

It may also be remarked that in England the liability of the heir has been extended beyond what are strictly assets at common law, as in the case of an equity of redemption in lands. *Solley* v. *Gower*, 2 Vernon 61, where it was held that although such equity is not assets at law because the estate is forfeited, yet the heir having a right in equity that ought in equity to be liable to satisfy a bond debt, and if the heir has sold or released his equity of redemption to prevent the creditors' obtaining the satisfaction of their debts, this court will follow the money into the hands of the heir or his executor. Here, then, is a case where the heir is held liable for what at law is not assets, but which in justice and equity ought to be applied to the payment of debts.

By the policy of our laws an equity of redemption is made legal assets, and there would seem to be no reason to doubt that it might be reached in the hands of the heir by a suit at law. The term "assets" does not denote any particular species of property, but is said to come from the French word *assez*, which means sufficient or enough; that is, enough means in the hands of the heir to pay the debt, and we think that to refuse to include among such property that which by our legislature is made to descend to the heir, in addition to that which went to him at common law, would be an adherence to the letter rather than to the spirit of the old law, and especially where by the old law the personal estate in the hands of the executor would continue liable.

In the case of the creditors of Sir Charles Cox, 3 P. Wms. 341, it was held that where a term of years was mortgaged the equity of redemption in the hands of the heir was equitable assets, and as such should go to the simple contract creditors equally with the specialty creditors. This rule of equity as to the distribution of assets among all classes of creditors is adopted in New Hampshire, and also in New York

and New Jersey and many other States; and even in England by the statute of 3 & 4 Wm. 4, c. 104, passed in August, 1834, lands of which a debtor dies seized are made liable for his debts of all classes, although a preference is there given to debts by specialty.

The policy of our law is to make no distinction, and also to charge all kinds of property with the payment of the debts, in the hands of the executor for a limited time, and after that to be distributed among the heirs, but still remaining liable for debts not barred by express limitations, and which could not before be proved.

It has been suggested that in respect to solvent estates, at least, claims of this sort are barred by the operation of sections 5 and 6 of ch. 161, Rev. St., which provides that no action shall be commenced against an administrator after three years from the original grant of administration, unless assets are retained by him by order of the judge of probate, which may be done to pay demands not due, or depending on a contingency, and which are filed in the probate court, unless the distributors give bond to pay such claims.

If this provision applied equally to estates settled in the insolvent course, there would be more force in the suggestion, but such is not the fact; on the contrary, by sections 13 and 15 of ch. 163, Rev. Stat., it is provided that claims that might be presented to the commissioners of insolvency and allowed, and were not, shall be forever barred; but that the remedy against the heir or devisee upon any claim which could not be allowed because it depended upon a contingency, should not be barred by any neglect to make such presentation.

When, therefore, we bear in mind that all estates may be settled in the insolvent course, whether actually insolvent or not, this provision, saving the remedies against the heir and devisee, must be regarded as strongly indicative of the policy of the law in reference to all estates whether settled in the insolvent course or not.

The difference between the two modes is merely formal, and cannot affect the substantial justice of preserving the charge upon the assets, after coming to the distributors for all claims that could not before be presented and allowed. In both modes the assets, both real and personal, are in the hands of the administrator, to be distributed among such creditors as can prove their claims in the methods pointed out; and after that, the surplus is passed to the heirs, devisees and legatees, and no further suits or proceedings can be maintained against the administrator.

Under such circumstances it is difficult to perceive any reason for saving the remainder against the heir and devisee in the case of insolvent estates which does not apply with equal if not greater force to solvent estates. In respect to the latter, the limitation is of suits against the administrator merely; and nothing is said of suits against the heir or devisee; and, therefore, as at common law, and the statute of 3 & 4 Wm. and Mary, the remedy against the heir and devisee existed before our statutes upon this subject, the additions provided by our statutes to the remedy against the administrator must be regarded as cumulative, unless the contrary appear, either expressly or by necessary implication.

*State* v. *Wilson*, 43 N. H. 418; *Rex* v. *Robinson*, 1 Burr. 799; *Bowen* v. *Lease*, 5 Hill 226.

It is true, that, in the case of solvent estates, there is no provision expressly saving the remedy against the heir and devisee, as there is in respect to insolvent estates, but it will be observed that in the latter case there is a provision which expressly bars all claims which might have been presented to the commissioner, but were not; and the saving of the remedy against the heir and devisee is in the nature of a proviso; while in respect to solvent estates the provision is merely that no suit against the administrator shall be maintained. Indeed, it may well deserve consideration whether the saving of the remedy against heirs and devisees by sec. 13, ch. 163, of the Revised Statutes, may not apply to solvent as well as insolvent estates. The reason for it is obviously the same, and the language of the provision is broad enough to include both, although by reason of its reference to the presentation of claims to the commissioners, there may be some ground for an inference that insolvent estates were alone referred to. But, however this may be, we think it furnishes a strong argument against a 'construction of secs. 5 and 6 of ch. 161 of the Revised Statutes, that should take away all remedy against heirs and devisees. Again, it is very clearly the policy of our statutes to give to all a reasonable opportunity to prove their claims, and to share in the distribution of the assets; and with that view the assets are all placed in the hands of the executor or administrator, and opportunity given during a limited time to make proof of claims and receive payment; and thereupon the assets remaining are distributed among the heirs and devisees, and others entitled to them; saving to such creditors as could not prove their demands during the time limited, for the reason that they were wholly uncertain and contingent, their remedies against the heirs and devisees. Such are the general features and policy of our laws upon this subject, and to justify a construction of any special provision that would cut off all remedy upon a contract of indemnity or a covenant in a deed of land, would require a pretty clear expression of legislative intention, more so than any we find in the provisions in question.

The cases are numerous where it would be practically impossible to make proof of claims while estates were in the course of administration. Among these are covenants of warranty of title to land where the breach has arisen long after the covenantee had himself conveyed with warranty, contracts of indemnity where the breach and the damages are both wholly uncertain, official bonds of sheriffs and their deputies involving complicated questions of suretyship and otherwise, individual liabilities of corporators involving great difficulties in adjusting the claims against each, and a great variety of other cases of a similar nature equally meritorious with those claims which were in a situation to be proved while the estates were in the course of administration; and it would clearly be not only unjust, but contrary to the policy both of the common law and our own statutes that their claims should be unpaid while there were sufficient means left by the debtor to discharge them.

If it were to be conceded that the legislature possessed the constitu-

tional right to bar claims that could not be presented and proved during the time limited, it would nevertheless be so repugnant to all notions of justice as to forbid such a construction unless the intention was very clearly expressed. If the demands had not accrued until the expiration of the limited time, a law which should cut off the remedy would in its effect be the same as the destruction of the right, and such an intention is not to be presumed.

The cases of *Cutter* v. *Emery, Adm'r*, 37 N. H. 567, and *Walker* v. *Cheever*, 39 N. H. 420, have been referred to, but it will be perceived that they are both suits against administrators, which were barred by the express terms of the statute; but no question was made as to its effect upon suits against the heir or devisee, and therefore they are not in point.

Upon these views, then, we are brought to the conclusion, that, in respect to creditors who could not prove their claims while the assets were in the hands of the administrator, or come into distribution for them, their remedies against the heirs and devisees are not barred by any provisions respecting either solvent or insolvent estates.

In the case before us it is to be assumed that the cause of action did not accrue to the plaintiff until it was too late to reach the assets in the hands of the administrator, and the claim is one sounding in damages and wholly unliquidated and uncertain. Under such circumstances, it would be palpably unjust that the heir should take the estate, all of which might be personal, free of the plaintiff's claim; nor do we think such a result would be in accordance with the policy disclosed by our legislation.

With these views there must be judgment for the plaintiff upon the demurrer.

PERLEY, C. J., dissenting:

I have not been able to agree in the conclusion, to which the court have arrived in this case, and I propose to state some of my reasons for dissent.

I understand the question to be, whether the next of kin, who, under a decree of the judge of probate, has received his distributive share of the personal estate, is liable on a covenant of the intestate inserted in a deed of real estate, where the title to the premises conveyed failed after the administration was closed by a final decree of the probate court.

It does not appear whether the estate was administered in the solvent or insolvent course, and it must be taken, that, either way, according to the decision of the court, the defendant is liable.

As the case does not show that the defendant had any real estate by descent from the intestate, it is quite clear, and indeed conceded, that at common law this action could not be maintained. 2 Saund. 7, Williams' Note, (4;) Rawle on Covenants, 579; Com. Dig. Assets, B.; *Ticknor* v. *Harris*, 14 N. H. 272.

At the common law no action could be maintained against a legatee or distributee, on either the bond or simple contract of the testator or

intestate. The goods of the deceased were liable for his debts, but the liability could be enforced only while the goods were in the course of administration, and by a suit against the executor or administrator. So far as the personal estate was concerned, the executor or administrator was the full and sole representative of a deceased debtor. So strict and universal was this rule that, even in a case where there had been a fraudulent conveyance of goods by the debtor in his lifetime, they could be reached in no way without an administration, or a suit against the vendee charging him as executor in his own wrong. 2 Saunders 137, Williams' Note.

It would not be easy to name any rule of the common law more thoroughly established or more familiar in practice than this, that every claim of a creditor on the personal estate of a deceased debtor must, in a suit at law, be made against the executor or administrator.; and in the present inquiry it is not unimportant to bear in mind that this is not a mere rule of practice or of pleading affecting the remedy only; it is a rule which determines the ultimate rights of the parties entitled; one of those established rules of property, which have become elementary and axiomatic in the common law. For, by the common law, when the distributee had received his share of the personal estate under a final decree closing the administration, his title to the property was absolute and subject to no claim of any creditor.

The body of the English common law, and the statutes in amendment of it, so far as they were applicable to the government instituted here, and to the condition of the people, were in force here before the Revolution as part of the law of the Province, except where other provision was made by express statute or by local usage. State v. Rollins, 8 N. H. 550.

The whole current of decisions, both here and in other States of New England, establishes the rule that these fundamental doctrines of the common law will be considered to have been adopted and retained here unless it very plainly appears that they were inconsistent with the new state of society, have been abolished in practice, or repealed by statute. So strong is this presumption that in many cases, where it would seem that the common law might well have been regarded as inapplicable to the new condition of the people here, the rule of the common law has nevertheless been held to remain in force until repealed by statute; take, for instance, the rule in Shelley's Case, and the right of primogeniture in the descent of lands. Dennett v. Dennett, 43 N. H. 499, 502; Provincial statute of 1718 abolishing the right of primogeniture; Jewell v. Warner, 35 N. H. 182; Com. v. Leach, 1 Mass. 59; Com. v. Knowlton, 2 Mass. 530, 534; Sackett v. Sackett, 8 Pick. 309, 316; Com. v. Churchill, 2 Met. 118, 123.

This action is one of entirely new impression. I have heard of no report, tradition or rumor that such a suit has been maintained or instituted before in this State. It cannot, therefore, be contended that there has been any usage or practice, which has changed the rule of the common law in this point.

There was certainly nothing in the general condition of things under

the provincial government inconsistent with the rule of the common law, which required all claims on the personal property of a deceased debtor to be made on the executor or administrator.

I may, therefore, I suppose, safely assume that this rule of the common law was brought here with the general body of the common law and became a part of the law of the province; and that it continued to be the law of the province until the Revolution, unless before that time it was changed by legislation here or in England.

There was no legislation of the State to change this rule after the Revolution and before the adoption of the State constitution. On the contrary the State legislature were careful in one of their earliest acts to establish in emphatic language the general doctrine, which has prevailed ever since, that existing laws, except such as were inconsistent with independence of Great Britain, remained in force under the new government until they were changed by legislation. Act of April 9, 1777, "for re-establishing the general system of laws heretofore in force in this State."

The following article is found in the constitution of 1783 and the constitution of 1792: "All the laws, which have heretofore been adopted, used and approved, in the Province, Colony, or State of New Hampshire, and usually practised on in the courts of law, shall remain and be in full force until altered by the legislature, such parts thereof only excepted as are repugnant to the rights and liberties contained in this constitution." Under this provision of the constitution, the party, who relies on any rule of the common law, is not called on to show affirmatively that it was "used and practised on in the courts of law" before the constitution; but the burden is on the party, who seeks to withdraw his case from the rule of the common law, to show that the rule was in some way abolished before the constitution was adopted, or has been changed by legislation since. *State* v. *Rollins*, 8 N. H. 550, 563.

I take the position, then, that there was nothing in the new condition of society here inconsistent with this rule of the common law; that it has not been abolished by any usage or practice, nor by the Revolution, nor by the adoption of the constitution. If I am right in this position the change, if any, must have been made by legislation, either before or after the Revolution.

It is not contended that there is any provision of any statute, before or since the Revolution, which in express terms changes the rule of the common law and gives the plaintiff the right to this action. I understand the ground taken to be that the rule of the common law has been changed and repealed by implication because that rule is inconsistent with other provisions of the statutes on the same subject. Whether there has been such a change and repeal by implication is a question of legislative intention. Did the legislature intend to give this new right of action?

To warrant the inference of an intention to repeal a former statute or to change a settled rule of the common law where no such intention is expressed; especially, a rule, which, like that in question, determines

the rights of property, the intention must be inferred plainly˙and necessarily from some particular provision, or from the general scope of the statute or statutes relied on to show the intention. Repeals of statutes and changes of the common law by implication are not favored. .The doctrine on this point is thus laid down in Bacon's Ab. Statute D., and in 19 Viner's Ab. 525 : "Repeals by implication are not favored in law ; nor are they allowed except the inconsistency or repugnancy is plain ; for they carry with them a reflection upon the wisdom of the legislature ; and such repeals have ever been confined to the repealing of as little of the preceding laws as possible." The same rule is quoted and approved in *McCartee* v. *The Orphan Asylum*, 9 Cowen 506, 507. In *Bowen* v. *Lease*, 5 Hill 221, 226, it is said : "As all laws are presumed to be passed with deliberation and full knowledge of all existing ones on the same subject, it is but reasonable to conclude that the legislature did not intend to interfere with or abrogate any former law relating to the same matter unless the repugnancy between the two is irreconcilable."

In *State* v. *Wilson,* 43 N. H. 415, Bell, C. J., has explained this rule of construction with his usual fullness and clearness. He there says, in delivering the opinion of the court : "The law does not favor a repeal by implication. It has ever been confined to repealing as little as possible of the preceding statute. Although two acts are seemingly repugnant, yet they shall, if possible, have such construction that the latter may not be a repeal of the former by implication, *and the same principle applies to the implied repeal of the common law."* The The learned Chief Justice in that opinion states that there are two cases of implied repeal : "First, where the provisions of the latter law are so inconsistent with and repugnant to the common law, or some earlier statute, that both cannot be in force :" "Second, if the whole of a former law is revised by a new statute and the latter appears to be intended to prescribe the only rules which govern the subject, the particulars of the old law, in which they differ, will be regarded as repealed by implication."

Under these rules of construction, which have the sanction of all the present members of this court, who concur in the decision of this case, it is plain that it is not the business of courts to infer an intention to make a change in any particular doctrine of the law from a change of public policy, or on grounds of general convenience. A clearly defined line of policy in legislation on the same subject, and obvious general convenience may doubtless be resorted to for aid in ascertaining the legislative intention where the question is upon the construction of ambiguous language used in a statute. But to change the law upon such reasons belongs to the province of the legislature. It is upon such grounds that all legislation is supposed to proceed.

Where, then, are the provisions of the statutes, which have changed this rule of the common law, and given this new right of action against the distributee of a deceased debtor's personal estate ? And at what time was this change effected ? For if the change has been made, there must

have been some definite time when it took effect, and some particular legislation intended to make the change.

Two grounds, I understand, are relied on to support this action.    In the first place it is maintained, that, inasmuch as real estate is now made liable generally for the payment of debts, and administered for that purpose, like personal estate, therefore the distributee, who has received his share of a deceased debtor's personal property, shall be liable to this action in the same manner as by the common law the heir, who had lands by descent, was liable on the covenant of his ancestor.    That is to say, when the statute made lands liable for debts like goods, the legislature intended to make the distributee liable to this action as at the common law the heir was, who had lands by descent—that this intention, though not expressed, is to be implied.    In the second place, because the general policy of the law makes all property liable for debt, and the statute declares that the property of a deceased debtor shall be chargeable with his just debts.    Therefore it is contended, that, in order to enforce this general policy and give effect to this provision of the statute, it must be implied that it was the intention of the legislature when these changes were made to give this new right of action against the distributee.

It is evidently very material to inquire at what time the changes were made in the law, which are relied on to support this action.    The discussion has appeared to go on an assumption that some new policy had been introduced on this subject by recent legislation, which required the courts to admit this new remedy in order to carry out the newly indicated legislative intention.    Now a resort to the history of legislation on this subject will show that there has been no change of the law since the Provincial Statutes of 1718, or, at the latest, since the English Act of 1732, that can possibly affect this case.    For, since those statutes, lands and goods have been liable to attachment and execution for debt in the lifetime of the debtor, and charged with his debts after his decease, in every point at all material to the present inquiry, as they are now.

In 1718, 4 Geo. 1, several provincial statutes were passed which appear to have been intended for a general revision of the law regulating the descent and distribution of estates and the remedies of creditors for the satisfaction of their demands.    The act of that year "for making of lands and tenements liable to the payment of debts" provided that "all lands or tenements belonging to any person in his own proper right in fee should stand *charged* with the payment of all just debts owing by such person as well as his personal estate, and should be liable to be taken in execution for satisfaction of the same ;" and by the same statute it was provided that where the goods and chattels belonging to the estate of any person deceased should not be sufficient to pay the just debts which the deceased owed, the judge of probate should be empowered to license and authorize the executors or administrators of such estate to make sale of all or any part of the houses and lands of the deceased so far as should be necessary to satisfy the just debts, which the deceased owed at the time of his death.    By the statute of that year prescribing forms of writs in civil actions, lands were liable to at-

tachment in mesne process and to extent upon execution substantially as they are now. By the statute "for the settlement and distribution of the estates of intestates," lands were made "subject to a division with the personal estate," as they are now, and the act of the same year "for the equal distribution of insolvent estates," divided the proceeds of the whole estate pro rata among the creditors on the same principle that still prevails.

It may be observed, that, while the provincial statute makes the *lands and houses* of a deceased debtor liable for his debts without limiting the liability to any particular estate of the debtor, the same statute makes only such lands or tenements as the debtor owned in fee simple liable to be taken in execution during his lifetime. This qualification as to the interest of the debtor in his real estate is a circumstance quite too trifling to be regarded in this inquiry; but even that qualification remained no longer than till the English statute, 5 Geo. 2, which went into operation on the 29th of September, 1732. By that statute, which was in force here upon the adoption of the constitution (*Ticknor* v. *Harris*, 14 N. H. 272,) the houses, lands, negroes, and other hereditaments, in the American colonies, belonging to any person indebted were made liable to and *chargeable* with all just debts, duties and demands of what nature or kind soever owing by any such person to his Majesty or any of his subjects, and were made *assets* for the satisfaction thereof, in like manner as real estates were by the law of England liable to the satisfaction of debts due by bond or other specialty, and were liable to be taken and disposed of in like manner as personal estates were seized, extended, sold or disposed of for the satisfaction of debts in the respective colonies and plantations.

By these statutes lands were made liable for debts, and administered for the payment of debts as they are now; and the general policy was then established by which all property of debtors, living or dead, stood *chargeable* with the payment of their debts. For the Provincial Statute of 1718 enacts that "all lands and tenements belonging to any person in his own proper right in fee simple shall *stand charged* with the payment of all just debts owing by such person as well as his personal estate," and the same statute provided the means of enforcing the application of a deceased debtor's real as well as personal estate to the payment of his debts substantially as the law does now. Then again, the English statute of 1732 enacts that lands, &c., shall be *chargeable* with all just debts, and provides for their sale and disposition for that purpose in the same manner that goods and chattels were sold and disposed of in the respective colonies and plantations.

So, by the statute of 1789, the personal estate stands *chargeable* with the debts of the deceased, and his real estate, in case the personal estate is deficient; and by the statute of 1822 the estate of every person dying in this State stands *chargeable* with the just debts that the deceased owed. By the provincial statutes cited all property was made liable for the payment of debts and was *chargeable* with their payment, and lands of deceased debtors were administered for the payment of their debts, and so the law has remained from that time till this. There

have been modifications of detail, and variations in the phraseology of the different statutes, but since then estates of debtors, living and dead, have always been in the language of the statutes *charged* or *chargeable* with the payment of debts, and lands have been on the same footing with goods in that respect.

An historical examination of the question will place it beyond doubt or cavil that for many more than an hundred years before this suit was instituted there has been no change in the general policy of the law requiring the application of all property to the payment of debts, nor in the statutory provisions, which have in terms made property chargeable for debts; nor in the provisions, which the law has made for enforcing the application of the debtor's property, real or personal, before or after his decease, to the payment of his debts, which can be suffered to have any bearing on this case. And creditors during all this time have had the same right to maintain this action against distributees of their debtor's estates, that they have now; yet, so far as I have any information, this is the first attempt to exercise a right, which has been regarded as so important as to call on the courts to imply an intention in the legislature to confer it upon general reasons, such as I have mentioned. One attempt has indeed been made to charge a legatee on the bond of the testator, but mainly on the ground that the statute, which reserves the action against a devisee, would by a liberal construction give one against a legatee; and that attempt failed. *Ticknor* v. *Harris*, 14 N. H. 272. The bare statement of the fact, that, for all this time without any change in the law bearing on the question, no such action has been maintained or instituted, would seem to be of itself a sufficient answer to the argument that changes in the law made so long ago give this right of action by implication. If this right of action had existed for one hundred and thirty years and more, it is impossible to suppose that no use should have been made of it till the institution of this suit.

The provision of the statute which declares that the estate of every person deceased shall be chargeable, among other things, with the just debts owed by the deceased, is placed in the chapter which provides for an inventory and for the settlement of the administration account, and can mean no more than that the administrator, when he settles, is bound to show that he has applied the estate to the several objects enumerated, including the debts, in the order in which they are set down in the statute. The estate is chargeable with the legacies as well as debts; and, by the terms of the statute and in the reason of the thing, is as much chargeable when transferred to a legatee as when transferred to a distributee. If under this provision of the statute the fund can be followed into the hands of a distributee it certainly can into the hands of a legatee. But it has been directly decided that under this statute a legatee cannot be charged upon the bond of the testator in a case like this. The estate is chargeable for debts under this statute, but only in the hands of the administrator, and by the methods which the statutes have prescribed. *Ticknor* v. *Harris*, 14 N. H. 272.

Passing to the consideration of the other question as to the effect of the change in the laws, which made lands as well as goods generally

liable for debts, by the common law lands were not, as a general rule, liable for debts either in the lifetime of the debtor, or after his decease. But if the ancestor expressly bound his heir by deed the heir was liable to the value of the lands which he held by descent; and by statute 3 & 4 W. and M., which has been adopted in this State, the liability was extended to the case of a devisee. Freehold lands were not administered at the common law, and never for any purpose went into the hands of the executor or administrator. Devises of land were not proved in any court of probate like wills of personal estate. It followed that all claims founded on any contract of the ancestor or devisor, so far as they were enforced against his lands, were made on the heir or devisee, and all claims on his personal estate, against his executor or administrator.

By the provincial acts of 1718, as has been seen, lands as well as goods were made liable generally for debts, and substantially the same provisions introduced for applying the property of a debtor, both before and after his decease, to the payment of his debts, as have been in use ever since. Under these acts lands were administered for the payment of debts like goods. Before this change the only remedy on the lands of the deceased debtor was by a suit against the heir or devisee; but after this there was no more necessity for a suit against the heir or devisee in respect of lands, than against the distributee or legatee in respect to goods. The suit in respect to lands before this had necessarily been against the heir or devisee, because the lands went to them and could be reached in no other way.

After lands were in this respect put on the same footing with goods and like them administered for the payment of debts, the remedy by a proceeding against the executor or administrator was as complete in respect to lands as in respect to goods, and the argument would certainly have been plausible, if not altogether conclusive, that the remedy in respect to the lands by a suit against the heir or devisee, being no longer necessary, was superseded; and that as the lands were administered like-goods for the payment of debts, so all claims on the lands thus administered were required to be made against the executor or administrator as in the case of goods; and such would probably have been the determination if the suit against heirs and devisees in certain cases had not been expressly recognized by statute.

But it certainly strikes me as somewhat extraordinary to maintain that because lands have been put on the same footing with goods and administered like them for the payment of debts, therefore, in respect to goods, where there has been no change, we are to infer that the legislature intended to give the creditor a new right of action against the legatee or distributee corresponding to that which the creditor had before against the heir or devisee. Lands were made liable like goods; thence it might well be inferred that the intention was to supersede the old remedies by suit against the heir or devisee; that the creditor, having by this change the same remedies against the lands of his debtor as against his goods, should be content with them and have no other. But how can we draw the other conclusion that the intention was, while the former remedy against the goods remained unimpaired, to give a

new right of action against the legatee or distributee, because lands were in that respect put on the same footing with goods?

It appears to have been assumed that there has been a general tendency of late years in our legislation, to give new remedies against the property of debtors and to make property liable to the payment of debts, which had been before exempted. I believe this assumption is not well founded. As to lands, a change was made and completed more than a century ago, that deprived them of the privileges, which, for reasons never prevalent in this country, they had before enjoyed. But here the question is as to the claim which a creditor has on the personal estate of his debtor. In this inquiry we have no concern with his real estate.

Instead of any tendency to greater stringency in the laws giving remedies for debts either against a living debtor, or against his estate after his death, the current of legislation has long been running constantly and decidedly in the other direction. By the law of England all the personal property of a debtor was liable to be taken for his debts in his lifetime, except perhaps the beasts of his plough and his clothing in actual use, for if he had two cloaks one of them might be taken. And all the personal estate of a deceased debtor was charged with the payment of his debts, certainly since the Statute of Westminster 2 (13 Ed. I.) 1285.

No claim of exemption was allowed against the creditor, except the funeral expenses; and these were limited to charges for the coffin, ringing the bell, parson's, clerk's, and bearers' fees, and perhaps the expenses for the shroud and digging the grave. 11 Viner 13, Ex'on 2, a. 2; 4 Burns' Ecc. Law, 348, 322, 323; Com. Dig. Ex'on 63, and 4.

By the common law there was no homestead right, no allowance to the widow for her present support, nor any exemption, such as has been given by successive enactments in this State, of large portions of the debtor's property from attachment and execution; to say nothing of the immunity which he now enjoys, from arrest and imprisonment in all actions on contract. I find nothing in the provincial statutes, which exempted any part or any article of a debtor's property from attachment and execution. I feel sure that I am fully warranted in saying that the tendency in all the legislation of this State on the subject has been gradually more and more towards a relaxation of the old severity, which made both the property and the person of the debtor liable for his debts, large and small; that as it respects goods—and it is with that kind of property alone that we are now dealing—there has been no change towards more strictness from the rule of the common law, nor any in respect to lands for these last hundred and thirty years.

If we go into a somewhat more extended inquiry, do we find that there has been anything in the legislation of the State since the Revolution, that can be relied on to support this action?

I do not find that any change was made in the law on this subject after the provincial acts of 1718, and the English statute of 1732, till the statute of 1789, "for ordering the descent of intestate estates and empowering the judge of probate to settle the same accordingly;" which provided that the chattels or personal estate should *stand charged*, as

they did before, with the payment of debts, and the real estate, for any deficiency; that the demands of creditors, who neglected to exhibit them within the time limited should be extinguished and the creditors "*totally barred*" from recovering the same, which would seem to have cut off all remedy against the heir or devisee, if that remedy had not been saved by the statute of 1808, which gave several remedies against the *heirs*, executors and administrators of persons, who were jointly bound, and merely modified the remedy for an existing right, but could not have been intended to give a new right to a party who was not liable before. *Ticknor* v. *Harris*, 14 N. H. 272. There is nothing else in either of these acts, that I can suppose to have any bearing on the present question.

The act of 1791 for the equal distribution of insolvent estates, following, in the main parts, the provincial acts of 1718, introduced the law for an allowance to the widow, was without any provision for proving claims not due or contingent, and barred all claims not allowed by the commissioner, or on appeal, unless the creditor could discover property not inventoried or accounted for. This act appears to have been intended only for estates actually insolvent, as it has no provision for distributing a surplus after payment of the debts allowed, and no saving of the action against an heir or devisee.

I do not find any other act introducing any change at all material to this case till 1822. In that year on the same day several acts were passed providing in much detail for the administration of estates, the payment of claims against the estates of persons deceased and the distribution of the residue among legatees, heirs, and next of kin, repealing former statutes, and evidently intended, as I think, to comprise a general revision of the whole law on that subject, and, in the language of the rule before cited from *State* v. *Wilson*, "to prescribe the only rules which should govern that subject." Acts of July 2, 1822, entitled "*An act for the Descent and Distribution of Intestate Estates*," "*An act for the Devising of Real Estate, the attestation, filing and recording of Wills, in certain cases, and the Distribution of Testate Estates*," "*An act Regulating the Settlement and Distribution of Insolvent Estates*," "*An act Defining the Jurisdiction, Powers and Duties of a Judge of Probate, and the Duties, Exemptions, and Liabilities of Executors, Administrators and Guardians in certain cases*," and "*An act to repeal certain acts therein mentioned*."

Under these acts of 1822, estates were chargeable with debts and legacies, as they had been before, and are now. It may be proper to note that the legatee was put in this respect on the same footing as the distributee; there could be no decree for a legacy or a distributive share until the debts charged by the statute were satisfied. The legatee and the distributee took under a like decree of the judge of probate for a distribution of the surplus after satisfaction of the debts charged on the estate, and it would seem to follow that the legatee would take under the decree with the same rights and liabilities as the distributee. I can see no ground under this statute for extending the liabilities of the dis-

tributee for debts of the deceased beyond that of the legatee; and it has been decided that the legatee is not liable to this action.   *Ticknor* v. *Harris*, 14 N. H. 272.

The act of that year defining the powers and duties of the judge of probate, &c., barred all claims not presented and prosecuted against a solvent estate, within the times limited, but introduced a new provision for the case of a demand depending on a contingency happening after the time limited had expired, but before the administration was closed; and in the act for the settlement of insolvent estates provisions were introduced allowing claims owing, but not due, to be proved before the commissioner, ordering the surplus after paying the debts allowed to be distributed, and, after enacting that all claims not allowed by the commissioner should be *forever barred*, providing "that nothing therein contained should be construed to impair any remedy of a creditor against the heirs and devisees of any such estate, whose demand could not be allowed by the commissioner because the same depended on a contingency, which had not happened before or during the time allowed to the creditors to prove their demands." I am not aware that the legislation of 1822 made any other changes in the law, that can be thought material in this case.

I am unable to see in these changes introduced by the acts of 1822 anything which gives the smallest countenance to the present action. The provision excepting from the general bar of claims the existing remedy against heirs and devisees certainly gives no new remedy nor recognizes any but the old remedy by the common law and the statute of 3 & 4, W. and M. against the heirs and devisees; for the terms *heirs and devisees* had a recognized legal meaning, which confined their application to the heir and devisee in the strict legal sense.   *Ticknor* v. *Harris*, 14 N. H. 272; *State* v. *Engle*, 1 N. J. 347.

The law on this subject remained without material change from 1822 to the general revision of the statutes in 1842.

The Revised Statutes retain the general provision of former laws that the estate shall be chargeable, among other things, with the just debts of the deceased, and introduce a new provision that demands against an estate administered as solvent depending on a contingency may be filed in the court of probate, and the judge may order the administrator to retain in his hands on the settlement of his account such sum as may be necessary to pay the same.   Rev. Stat. ch. 161, sec. 6.   The remedy of a creditor against the heirs or devisees upon any claim which could not be allowed by the commissioners on an insolvent estate, because it depended on a contingency which did not happen during the pendency of the commission, is saved as in the statute of 1822, ch. 163, sec. 13, and all demands, which might have been presented to the commissioners and are not allowed by them, or on appeal, are *forever barred.* Ch. 163, sec. 15.

Under this new provision for exhibiting claims depending on a future contingency, all "claims which have accrued against the estate in consequence of the acts or stipulations of the deceased in his life," may be enforced against an estate administered as solvent in the hands of the

executor or administrator ( *Walker* v. *Cheever*, 39 N. H. 420, 429,)
and where the estate is administered as insolvent all claims, which might
have been presented to the commissioners and were not, are *forever
barred*. The saving of the old remedy for claims depending on a fu-
ture contingency, gives no new right of action not known to the com-
mon law. *Ticknor* v. *Harris*, 14 N. H. 272. From which it would
seem to follow that this suit against a distributee, not being maintain-
able at the common law, is barred, if the estate was administered as
insolvent; and if the estate was administered as solvent, then the claim
sued in this action might have been exhibited and enforced against the
estate in the hands of the administrator, and, according to the doctrine
of *Hutchinson* v. *Stiles*, 3 N. H. 404, no suit could be maintained for
it against the heir or devisee, and certainly not against a distributee.

It is undoubtedly true that the general policy of our law requires the
property of a deceased debtor, with certain specific exceptions, to be
applied to the payment of his debts, before any other claims on it can
be admitted. But there is also another policy pervading our legislation,
which has dictated the numerous enactments for quieting titles in those
who have possession of real or personal estate, after reasonable oppor-
tunity to assert dormant claims. And this policy of quieting titles and
promoting the early and final adjustment of all conflicting claims will,
I think, be found to have been steadily followed in the successive changes
that have been made in our laws for the settlement of the estates of de-
ceased persons. The provincial laws on this subject, which placed lands
as well as goods in the hands of the administrator for the payment of
debts, and provided for the equal distribution of insolvent estates, evi-
dently pursued that policy. The method adopted has been to put the
whole estate, real as well as personal, in a course of administration, and
every successive change has provided new opportunities for exhibiting
and enforcing claims against the estate in the hands of the administra-
tor; allowing claims, for instance, not due to be presented to the com-
missioner, and providing in the last revision for exhibiting claims de-
pending on a future contingency.

Taking these changes in connection with the doctrine established in
*Hutchinson* v. *Stiles*, and in the subsequent cases, that former reme-
dies against the estate in the hands of an heir or devisee were taken
away in all cases where the claim could be made against the executor or
administrator, it is apparent to me that the general policy of legislation
on this subject, instead of tending to the creation of new remedies
against those who take the estate, real or personal, under a decree of
final settlement in the probate court, has led constantly in the other
direction; that, in the general revisions in 1822 and of 1842, the inten-
tion was to make reasonable provision for every claim against the State
in those revisions, and to bar and extinguish all claims not prosecuted
in the manner provided by the statutes on the subject; that all who had
claims on the estate should look to the provisions of the statutes for
their remedy, and that every person, who took a share under a final de-
cree settling the estate, should hold it free from all claims except such
as appear on the face of the statutes. The question here is whether

this new right of action has been given by implication; and I feel confident in saying that from the course of legislation on this subject no inference can be drawn of an intention to give any new rights to creditors against parties who had received their shares of a deceased person's estate under a final decree closing the administration.

The whole law on this subject has been twice carefully and minutely revised, once in 1822 and again in 1842, with the manifest intention, as I think, in both cases, to provide a complete system defining all the rights and prescribing all the remedies of parties, who had claims on the estates of deceased persons.   In such cases, according to the canon of interpretation before cited from *State* v. *Wilson*, the particular provisions of former laws on the subject, not retained in the revision, will be held to have been repealed by implication; and such must have been the understanding of the legislature, as is shown by the saving of the former remedy in certain cases against the heir and devisee.   It is to be observed that this remedy is saved in the case of an estate administered in the insolvent course, but not in the case of an administration in the other course; from which the inference is irresistible that it was not intended to be saved, but was wholly taken away in the case of an estate administered as solvent.   And by the statute that took away the old remedy against the heir and devisee we certainly cannot imply an intention to give a new right against the distributee.

Then, again, in this general and detailed revision of the whole law on the subject, in which the legislature think it necessary to guard by express reservation against an implied repeal of the old remedy against the heir or devisee who takes the real estate, if they intended to give a new remedy against the legatee or distributee, it is incredible to me that they should not have said so in plain terms instead of leaving it to be implied by judicial construction.

The most careful examination that I have been able to give the question has led me, without resorting to the cases decided in this State, to the conclusion that there is no provision of any statute, nor anything in the policy indicated by the successive changes that have been made in the law on this subject, from which the court is warranted in drawing the conclusion that the rule of the common law has been changed so as to give this new action against the distributee, who has received his share of the personal estate under a decree of the probate court finally closing the settlement of the estate, whether the administration was in the solvent or insolvent course.   And it also appears to me, that, in the successive changes made by legislation in the law on this subject, the tendency has been, and the design has been, to provide for a full and complete settlement of the estates of persons deceased, while they were in the course of administration, quieting all claims against the estate, even those, which were prospective and contingent, by the final decree, which distributed the estate and closed the administration; and that this object was supposed to have been accomplished by the system of regulations comprised in the Revised Statutes, with the single exception of the right to the old remedy against the heir or devisee of an estate rep-

resented insolvent for a contingent claim that could not be proved before the commissioner.

Let us see, then, in the next place, how the question stands on the authority of cases which have been decided in this State. *Hutchinson* v. *Stiles*, 3 N. H. 404, decided in 1826, was covenant against the administrator of the heir, who had lands by descent from the covenantor. It appeared by the pleadings that the breach happened after the death of the covenantor, but before the administration on his estate was closed; it did not appear whether the suit was brought before or after administration was closed. It was decided that "in this State an heir is liable on the covenant of his ancestor only in cases where no action for the same cause could have been sustained against the executor or administrator of the ancestor."

In delivering the opinion of the court, Richardson, C. J., states the question to have been, "whether an heir is liable in this State on the covenant of his ancestor, where a remedy might have been had against the executor or administrator of the ancestor." After showing the inconsistency of charging the heir during the administration for land that might be afterwards taken from him under our law to satisfy other debts, the Chief Justice proceeds to say: "And we are further of opinion that when the covenant of the ancestor is broken before the administration of his estate is closed, and he, with whom the covenant was made, neglects to enforce his claim upon the estate, in the ordinary course, against the executor or administrator until all remedy against them is barred and the estate is distributed according to law, in such a case the heir is not liable."

This case of *Hutchinson* v. *Stiles* establishes a very important principle of general application, which has been recognized and affirmed in the subsequent decisions, to wit, that the former remedy against the heir or devisee is taken away under our statutes in all cases, where the claim could be made against the executor or administrator.

The *Judge of Probate* v. *Brooks*, 5 N. H. 82, decided in 1829, was debt against the devisees of a surety on a bond to the judge of probate for a breach of the condition happening after the report of the commissioner but before the settlement of the estate, which was represented insolvent. It was held, that, inasmuch as the provision for filing contingent claims in the statute of 1822 did not apply to the case of an estate administered in the insolvent course, there was no remedy against the estate, while it was in the hands of the administrator, and therefore the devisee, under the statute of 3 & 4, W. and M. and the reservation of that remedy in our statute, was liable.

There is a necessary implication from this case, that, where an estate is not represented insolvent, the remedy against both heir and devisee is superseded by the provision for filing contingent demands. For it was conceded, that, according to the doctrine of *Hutchinson* v. *Stiles*, no action lay against the heir or devisee, if the claim could have been made on the estate in the hands of the administrator. It was argued by Joel Parker for the defendant that the provision for filing contingent demands applied to estates administered in the insolvent as well as the solvent

course, and that therefore the demand, though contingent, might have been made on the administrator after the report of the commissioner, and before the final settlement of the estate; and the case appears to have turned on the question, whether, by the statute of 1822, a contingent claim could be filed where the estate was represented insolvent. In answer to this position of the defendant the court say : "After a most attentive consideration of these provisions we are satisfied that they were not intended to apply in case of estates administered in the insolvent course. In particular we think the provision in relation to demands depending on a contingency was not intended to be so applied."

This case proceeds upon the general rule declared in *Hutchinson* v. *Stiles*, that no action can be maintained against the heir or devisee when there is a remedy against the executor or administrator, and applies the rule to the case where the statute has given a remedy by providing for the filing of a contingent claim. As, therefore, by the present statute all contingent claims may be filed, where the estate is not represented insolvent it would seem to follow as a necessary conclusion that no action can in any case be maintained against the heir or devisee, nor, of course, against the legatee or distributee, where the estate is administered in the solvent course.

*Ticknor* v. *Harris*, 14 N. H. 272, decided in 1843, was covenant against the defendants on the deed of John Harris, alleging that under his will the defendants received real and personal estate, and that the covenant was broken after the estate was settled in the insolvent course. The question arose on a demurrer to the declaration.

The plaintiff took in argument the general ground that the law charged the estates of deceased persons with the payment of debts, but, to charge the legatees, relied chiefly on the statute, which made devisees liable in such a case, contending that legatees were included in the meaning of the term devisees used in the statute, and whether the statute should have that enlarged construction was evidently treated as the main point in the case. The endeavor was to distinguish a legatee from a distributee, and hold the legatee liable, though the distributee was not, on the ground that the statute included the legatee under the term "*devisee.*" The whole discussion shows that no such idea was broached by counsel or entertained by the court, as that the distributee could be held liable if the legatee was not.

In reference to the argument from the general rule of our law that all the estate of a deceased person is chargeable with his debts, Parker, C. J., says : "It is a general principle pervading our legislation that the estate of an individual, real and personal, with certain exceptions in the case of poor debtors, is liable for the payment of his debts. It applies as well during the lifetime of the debtor as afterwards; but in both cases it is to be made effectual by force of other special provisions of the law for that purpose. If a debt may be said to exist when the remedy is barred by statute, the property of the debtor cannot be applied to the payment of it, whether the statute be applicable to the estate of a living debtor or one that has deceased."

In answer to the position that the term "devisees" in the statute might

be construed to include legatees, the Chief Justice says : "This action includes two devisees, and against them we see no reason why it may not well be maintained; but it includes also others, who are children of John Harris, and who, it is averred, have legacies by his will. The plaintiff's counsel argue that it may be supported against them by force of the term *devisees* in the exception, because that term is used to include those who have personal estate by the will, as well as those who have real estate. But the term *devisees* in the proviso of the statute for the settlement of insolvent estates cannot be considered as including legatees of personal estate because such construction would be useless. The proviso is that the act shall not impair the remedy of creditors against the heirs or devisees. It gives no new rights, and creditors had no right of action against legatees before its passage, which the act could impair. There is no provision by the common law or by any English statute in amendment of it before the Revolution, or by our statutes for the maintenance of an action at law against a legatee to recover his debt."

After stating the remedy under the English statute of distributions by recalling a legacy if, after payment, more debts appeared, the Chief Justice proceeds to say of it : "Our statute respecting the settlement of insolvent estates cuts off this remedy so far as contingent demands, which could not be allowed by the commissioner, are concerned, by its provision that no suit shall be sustained against the executor or administrator otherwise than is provided in that act, 5 N. H. 82; and as no judgment can be had against him he has no occasion to recall anything from the legatees to answer such demands; and the statute by taking away this remedy has provided no other by which the legatees are made liable. Our statute by saving the remedy against the heirs and devisees makes the real estate chargeable in their hands, *but it goes no farther*."

After an exhaustive investigation and an elaborate discussion, the learned Chief Justice draws the conclusion that "no way seems to be provided for a creditor to reach a *distributive share* of the personal estate in the hands of the heirs, where the suit against the administrator is taken away."

If this conclusion is correctly drawn from the premises before established as the grounds of the decision, it is of course decisive of the present case. The steps, by which this conclusion is reached in that case, are these : Neither the common law, nor any statute in amendment of it, nor any statute of the State, gives the action, nor the general principle that all property is liable for debts. The saving of the existing remedy against heirs and devisees carries the law no farther and gives no new right; the statute bars all remedy against the executor and administrator, and gives no remedy against the legatee, therefore the action against the legatee cannot be maintained. It is apparent that every one of these reasons applies with at least equal force to the case of a distributee; and therefore from the proposition that the legatee is not chargeable in any case for the debts of the testator, the learned judge draws the corollary that the distributee is not liable, a conclusion which follows legally and logically from the premises before established.

I do not understand that it is proposed to overrule the case of *Ticknor* v. *Harris*, but it is thought that it may be distinguished from the present case because the attempt there was to charge legatees, and in this the defendants are sued as distributees. But it is to be observed that some of the legatees in that case were also next of kin, and in the absence of a will would have taken their share of the personal property as such; and it strikes me as totally repugnant to all the general principles established in the law on that subject to hold, that, by making a gift to take effect at his death, the debtor could defeat the right of his creditors to satisfaction out of his property. To entertain such a proposition would be little short of a legal absurdity.

Then, again, the conclusion drawn from the whole discussion that no action can be maintained under our statutes against a distributee for the debt of the intestate, is in no proper sense an *obiter dictum;* it is a point necessarily involved in the decision of the main question. I have not been able by any ingenious and evasive distinction to withdraw the present case from the authority of *Ticknor* v. *Harris*. It cannot be improper to mention that the present case was pending when Bell, C. J., resigned his office, and that it had been considered by him. No man now living can claim to be better acquainted with the whole history and all the traditions of the law in this State. He was also one of the commissioners who prepared the last revision of the statutes, and is understood to have had a principal share in that work. He has left us among his papers his opinion on this case, in which after commenting on *Ticknor* v. *Harris*, he concludes as follows: "This decision seems perfectly conclusive in this case, and there must be judgment on the demurrer for the defendant." I rely on *Ticknor* v. *Harris* as an authority which controls the present case.

In the case of *Cutter* v. *Emery*, 37 N. H. 567, the question was whether the claim was barred by neglect to present it and bring the suit within the times limited by the statute; and the court say: "It is objected that the present action cannot be sustained because the claim was not presented to the administrator nor the suit brought within three years after the original grant of administration. It is not suggested that the estate is represented insolvent, nor that the administration has been suspended, nor that the claim, not being due, or depending on a contingency, has been filed in the probate court and the sum necessary to pay it reserved in the administrator's hands, by order of the court; and it is not at once perceived how it can be successfully contended that the claim is not barred on both grounds.

It is said the cause of action did not arise until since the intestate's death at the time when the levy was complete on the 6th of May, 1838; and in such case a demand within two years and a suit within three years are not required. But it seems to us that provision is made in the 6th section for such cases, and that, unless the claim has been filed in the probate court, and a fund reserved for its payment, it may be barred by neglect to present it, or to commence a suit. Though a claim is not due, and it is contingent whether it ever will be, it is still capable of presentment, and there must be few cases where by the exercise of pro-

per diligence a party may not entitle himself to bring his action within three years. There is nothing unreasonable in providing that an undue or contingent claim should be barred, if it is not properly filed in court and a fund reserved for its payment."

The action in *Cutter* v. *Emery* was against the administrator, and not against the distributee, but the grounds, upon which the decision is put, apply with equal force to the case of a distributee or legatee. Why could not the action be maintained? Because by the statute unless the claim was duly presented to the executor or administrator within the time limited, whether due or undue, absolute or contingent, it was *barred;* and because it was not unreasonable that the party, who intended to rely on a contingent demand, should be required to take his remedy, where, in the case of a solvent estate, the statute provided it, to wit, by filing it with the administrator and obtaining an order reserving a fund. There is no hint or suggestion that the plaintiff still had a remedy against the distributee, but the claim is said to be *barred.*

It may be noted that in *Cutter* v. *Emery* the contingency, on which the claim depended, was the fact that the plaintiff had been compelled to pay for the default of a principal as joint surety with the intestate on an official bond, which cannot be distinguished in character from the contingency where there is a breach of a covenant to warrant the title to land.

This case follows and confirms the principle laid down in *Ticknor* v. *Harris*, that the intention of the statute was to bar and extinguish all claims not exhibited to the executor or administrator, except in the single case of the remedy reserved for a contingent claim against the heir and devisee where the estate is administered in the insolvent course.

The case of *Walker* v. *Cheever*, 39 N. H. 420, was a bill in equity against the defendant as executor and legatee, stating that the plaintiff paid a debt of the testator as his surety after his death. The bill being against a legatee as well as the executor, the decision applies to the case of a legatee and shows that the claim is barred against him as well as against the executor or administrator. The court say: "The plaintiffs insist that the cause of action did not accrue to the complainants till July 1, 1854, when they paid the deceased's share of this note, and no limitation could begin to run till that date; that the provisions of the statute prescribing the exhibition and limitation of claims and suits, relate only to debts, which existed at the death of the testator, and are inapplicable, both in their letter and in their reason, to claims, which, like the present, have arisen after his decease. But we think the policy of the law applies with equal force to the case of claims which have accrued against the estate after the decease in consequence of the acts or stipulations of the deceased in his life, as to those where the rights of action arose before his death. Both, we think, are causes of action against the deceased within the meaning of the statute. The former fall within the class of demands not due, or depending on a contingency, which the statute requires to be filed in the court of probate and a fund reserved for their payment."

According to this case of *Walker* v. *Cheever*, all claims that arise

against an estate after the death of the deceased "in consequence of his acts or stipulations in his life," are contingent within the meaning of the statute; the policy of the statute requires them, as well as claims due at his death, to be presented and settled in the course of the administration; and, in the case of an estate settled in the solvent course, the statutory bar applies equally to all classes of demands.   This rule is applied to the case of a legatee as well as the executor, and I am wholly unable to distinguish the case of a distributee from that of a legatee; neither are mentioned in the statute, and the doctrine of the case is that in accordance with the policy of the law the statutory bar is general and absolute.

The cases above cited are all, I believe, that have been decided in this State, which appear to have any bearing on the present question. I find nothing in any one of them which gives any countenance to this action.   On the contrary, they all, as I understand them, recognize the policy which pervades our legislation, of requiring claims against deceased persons to be made and enforced against the estate while in the course of administration, and of making the decree, which distributes the balance, with the single exception specified in the statute, a final settlement of the estate; and the case of *Ticknor* v. *Harris* I cannot but regard as decisive of the present question.

The respect, which is due to the opinion held by a majority of the court, required me, as I thought, to give this case the fullest and most careful examination in my power before I determined on a final dissent. I have also looked upon the question involved in it as one of no trifling importance.   In these considerations my apology must be found for the length to which these remarks have been extended.

I have not found any provision of the common law, or by the English statutes in amendment of it before the Revolution, or by our statutes, for the maintenance of this action, and my conclusion is that there should be judgment for the defendant.

BARTLETT, J.   I concur in the foregoing opinion of the Chief Justice.